THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES *v.* MILDRED CROWE.

[No. 1-576A83.  Filed September 21, 1976.]

678

*Jeffrey R. Frank,* of Evansville, for appellant.

*Stephen C. Haas,* of Evansville, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—Defendant-appellant The Equitable Life Assurance Society of the United States appeals from a summary judgment in favor of plaintiff-appellee Mildred Crowe.

We reverse.

## FACTS

Barbara Phillips was an employee of General Tire and Rubber Company, which purchased from Equitable accidental death insurance coverage for General Tire employees. Crowe was the beneficiary of Phillips, Crowe's daughter, under the policy issued to General Tire by Equitable.

General Tire temporarily laid off Phillips on February 15, 1974. Phillips was accidentally killed on February 27, 1974, while she was still laid off from General Tire.

Equitable's policy covering General Tire's employees provided, *inter alia:*

". . . [I]nsurance hereunder of any employee shall cease automatically upon the occurrence of any of the following events :

\*   \*   \*

*the termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment* except that under the circumstances stated below *the Employer may, for the purposes of the insurance hereunder, by filing written notice with the Society and continuing the payment of premiums for the insurance hereunder, regard employees as still in the employment of the Employer for the respective periods stated:*

\*   \*   \*

(b) *where the employee is given leave of absence or temporarily laid off:* for the full period of such leave of absence or lay-off, but not exceeding a maximum period of ninety days. After such ninety day period the employee may continue his insurance hereunder by payment of the premium for such insurance.

At the expiration of the respective periods above mentioned, unless the employee shall then return or shall have theretofore returned to active work, his insurance hereunder shall terminate automatically." (Our emphasis.)

General Tire's premium to Equitable for February, 1974, included payment for coverage of Phillips. After Phillips was laid off, General Tire did not notify Equitable to continue her coverage.

The trial court's judgment stated:

". . . [T]he Court having had the plaintiff's and defendant's Motion For Summary Judgment under advisement, the Court having heard argument of counsel, and having examined said briefs filed in support and in response thereto and being duly advised in the premises now finds that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law on her Amended Complaint therefore, the Court now sustains plaintiff's Motion For Summary Judgment and overrules defendant's Motion for Summary Judgment.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, that there is no genuine issue as to any material fact and that the plaintiff is entitled to judgment as a matter of law on her Amended Complaint, therefore the Court now sustains plaintiff's Motion for Summary Judgment and overrules defendant's Motion For Summary Judgment.

IT IS FURTHER, ORDERED, ADJUDGED AND DECREED, that the plaintiff, Mildred Crowe, have and recover of and from the defendant, The Equitable Life Assurance Society of The United States, the sum of Nine Thousand Five Hundred Dollars ($9,500.00), pluss[sic] interest, and the cost of this action."

## ISSUES

1. Whether the trial court's summary judgment was defective in that it did not designate the issues or claims upon

which the trial court found no genuine question of material fact.

2. Whether the trial court erred in considering exhibits attached to Crowe's brief in support of her motion for summary judgment.

3. Whether the trial court erred in granting Crowe's motion for summary judgment.

4. Whether the trial court erred in denying Equitable's motion for summary judgment.

## DECISION

ISSUE ONE:

Equitable argues that the trial court's summary judgment was defective, relying on *Singh* v. *Interstate of Indiana No. 2, Inc.* (1969), 144 Ind. App. 444, 246 N.E.2d 776, which held that a trial court judge, in entering summary judgment, (1) must "make an affirmative finding that there is no genuine issue as to any material fact undetermined between the parties" and (2) must "state with particularity his reasons for granting a summary judgment." 144 Ind. App. at 449, 450. See also *Lows* v. *Warfield* (1971), 149 Ind. App. 569, 274 N.E. 2d 553, n. 1.

Inasmuch as the trial court's summary judgment, *supra,* contained a finding that "there is no genuine issue as to any material fact," the trial court did not contravene the first mandate of *Singh, supra.*

However, Equitable argues that the trial court's finding did not comply with Ind. Rules of Procedure, Trial Rule 56(C), which provides, in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment may be rendered upon less than all the issues or claims, including

without limitation the issue of liability or damages alone although there is a genuine issue as to damages or liability as the case may be. A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties. *The court shall designate the issues or claims upon which it finds no genuine issue as to any material facts.* Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the affidavits and testimony offered upon the matters placed in issue by the pleadings or such evidence." (Our emphasis.)

Equitable's argument is that the trial court erred in not designating the issues or claims upon which it found no genuine question of material fact.

The Civil Code Study Commission Comments, found at 3 Harvey, *Indiana Practice* 542, 547 (1970), state:

"The last two sentences of subdivision (c) were added to care for two problems raised by recent Indiana cases. The first of these sentences should make it clear that the court granting summary judgment must state those issues and claims upon which summary judgment is granted. This follows Harris v. Young Women's Christian Ass'n, 1968, 14 Ind. Dec. 420, 237 N.E.2d 242 requiring the lower court to specify 'the grounds upon which such judgment is entered' so that the court on appeal can understand what is in issue. Cautious language was used in the rule to avoid a requirement that the judge make detailed findings. *The purpose of the rule is to enable the case to proceed in an orderly manner if partial judgment is entered,* and to allow everyone to know exactly where or upon what issues the decision was made." (Our emphasis.)

Therefore, it is clear that TR. 56(C) requires a trial court to designate the issues or claims upon which it finds no genuine question of material fact only where it enters summary judgment on some but not all of the issues or claims in a case and tries the remaining issues or claims. See 3 Harvey, *supra,* §§ 56.8, 56.9.

Here, the trial court entered a final summary judgment encompassing all the issues and claims in the case. Therefore, neither Equitable nor this court was left in a quandary as to which issues or claims must meet the tests of TR. 56.

Equitable also contends that the trial court's summary judgment, *supra,* was defective in that it did not include the trial court's reasons for granting summary judgment, as required by *Singh, supra.* However Equitable neglected to bring this error to the trial court's attention in its motion to correct errors, and therefore failed to preserve this contention for appeal. Ind. Rules of Procedure, Trial Rule 59 (G) ; *Haskett* v. *Haskett* (1975), 164 Ind. App. 105, 327 N.E.2d 612.

ISSUES TWO and THREE:

We shall consolidate our discussion of Equitable's next two assertions of error.

Equitable claims the trial court erred in considering two exhibits which Crowe attached to her brief in support of her motion for summary judgment. Equitable further contends that the trial court erred in granting Crowe summary judgment.

The means by which parties may support or oppose a motion for summary judgment are: affidavits, depositions, answers to interrogatories, or—in the trial court's discretion—testimony. Ind. Rules of Procedure, Trial Rule 56 (E). In granting summary judgment, a trial court shall consider these sources plus the pleadings and admissions on file. TR. 56 (C), *supra.*

Therefore, a trial court may not consider facts set forth in a party's brief when granting summary judgment. *Glosser* v. *City of New Haven* (1971), 256 Ind. 33, 267 N.E.2d 67; *Schill* v. *Choate* (1969), 144 Ind. App. 543, 247 N.E.2d 688.

The first document was General Tire's application to Equitable for the accidental death policy covering General Tire's employees. It was so innocuous that, assuming arguendo that the trial court did consider it, such consideration would not have affected the substantial rights of Equitable and therefore would have been harmless error. Ind. Rules of Procedure, Trial Rule 61; *Apple* v. *Apple* (1971), 149 Ind. App. 429, 274 N.E.2d 402.

The second exhibit consisted of a cover letter and attached pages of an insurance contract. The letter was written on August 5, 1955, by a General Tire executive and was addressed to an executive of Equitable. It began:

> "We are sending herewith, two copies of the new pension and insurance agreement effective August 1, 1955. The provisions of this new insurance agreement are to be included in our group contract with Equitable, effective August 1, 1955."

The "new agreement" provided:

> "In the event of lay-off, coverage under this Insurance Program willbe [sic] continued to the end of the calendar month following the month during which the lay-off occurs. By application by the Employee to the insurance carrier during such period and payment by such Employee of the current group rate premium at least monthly in advance, coverage . . . may be continued for a maximum of one year following such period."

The Equitable policy covering General Tire's employees on February 27, 1974, took effect on December 1, 1970, and was "issued in consideration of the cancellation of the replaced policy. . . ."

This court must give effect to the language which Equitable and General Tire used in their 1970 policy, in the absence of any legal reason why they could not enter the contract or express it in language of their choice. *Jenkins* v. *King* (1946), 224 Ind. 164, 65 N.E.2d 121, 163 A.L.R. 397. The 1970 policy clearly stated that the 1955 policy

and the automatic lay-off coverage therein was cancelled and replaced by the 1970 policy, and the provision therein, *supra,* which allowed lay-off coverage only upon General Tire's performance of two conditions: continuing payment of premiums to Equitable, and notifying Equitable that the laid-off employee's coverage should not be terminated.

We therefore conclude that a proper reason for the trial court's entry of summary judgment for Crowe could not have been that Phillips was automatically covered while laid off by the 1955 policy. We further conclude that the trial court could not have properly considered the 1955 policy to constitute the notice required under the 1970 policy. *Glosser, supra; Schill, supra.*

Inasmuch as the trial court did not state the reasons why it granted summary judgment to Crowe, we face the task of examining the record to ascertain a basis for the trial court's decision independent of the second exhibit.

Crowe first proposes that Equitable's coverage of Phillips continued until February 27, 1974, because she had not been "terminated" by General Tire but had been only temporarily laid off.

*Couch on Insurance,* § 82:105, at 1058 of Vol. 19 (R.Anderson, Ed. 1968), states:

> "A temporary, as well as a permanent, discharge terminates liability where the policy does not differentiate between the two. Thus, a policy which provides for termination when employment ends, without distinction between layoff and discharge, terminates when the employee receives a layoff slip reciting that he is released from service, it appearing that the employer had no work for him to do, that he might never be taken back to work, and that if he were, he would have to be re-employed."

Here, the 1970 policy provided for "termination" whenever a General Tire employee ceased active work—with no distinction as to whether the cessation was permanent or temporary.

In *Ambrose* v. *Metropolitan Life Insurance Co.* (1939), 18 N.J. Misc. 42, 10 A.2d 479, the court held that "[t]he phrase 'termination of employment' assuredly does not mean the mere cessation of active service." However, that court was interpreting a contract which expressly provided that a lay-off of no more than two months would not amount to termination unless the employer so notified the insurance company. This court faces a policy which expressly provides the contrary to the *Ambrose* holding.

In *Ziegler* v. *Equitable Life Assurance Society* (1935), 219 Iowa 872, 259 N.W. 769 the court held that an employee was covered by group life insurance because the circumstances in that case indicated that the employee had been temporarily laid off rather than discharged. In *Ziegler,* the employer both paid the employee's premiums and reported to the insurance company that the employee's status had not changed. Thus the critical issue in *Ziegler*—the relationship between employer and employee—is not a question in this case; and the critical issue in this case—whether the employer gave the requisite notice to the insurance company—was not a question in *Ziegler.*

For this court to reach the result that Phillips was laid off rather than terminated within the meaning of the 1970 policy, we would have to ignore that portion of the policy, *supra,* which states that whenever an employee is not actively working, employee's coverage is "terminated" unless General Tire performs the conditions specified. We cannot treat any part of a contract as surplusage if it can be given a meaning reasonably consistent with other parts of the contract. *Oard* v. *Rechter* (1975), 163 Ind. App. 166, 322 N.E.2d 392.

For the above reasons, we hold that Phillips—who had not worked for several days prior to her death—came within the

1970 policy lay-off provision, *supra,* and was "terminated" for purposes of accidental death insurance coverage unless General Tire performed the conditions set forth in said provision.

Crowe looks to the implementation of the policy by General Tire as proof that it both continued premiums and gave Equitable notice so as to continue coverage of Phillips.

At the beginning of February, 1974, General Tire paid to Equitable a premium for insurance coverage of its active employees, including Phillips, for the month of February, 1974. General Tire at the same time sent to Equitable a monthly Employer's Report. The 1970 policy required such reports to include the number of General Tire employees who became insured or had their coverage terminated in the preceding month. General Tire's February, 1974, Employer's Report did not mention Phillips.

Crowe maintains that General Tire's February, 1974, Employer's Report amounted to written notice to Equitable that its coverage of Phillips should continue throughout February, 1974. Crowe is wrong for two reasons.

First, said report dealt only with events which occurred in January, 1974. It could not possibly have put Equitable on notice as to an event which would occur later.

Secondly, Crowe's position overlooks another portion of the provision covering Employer's Reports, to-wit:

"Failure on the part of the Employer to record the insurance of any employee who has qualified for coverage hereunder, or failure on the part of the Employer to include such insurance in the reports furnished to the Society, shall not deprive the employee of his insurance; *nor shall* failure to record the termination of insurance of any employee, or *failure to include such termination in the reports furnished to the Society, be construed as involving or permitting the continuation of his insurance beyond the date of termina-*

*tion as determined by the provisions of this policy."* (Our emphasis.)

Rather than ignore this language, we must, if possible, accord it a meaning consistent with the rest of the policy. *Oard, supra.* In so interpreting the 1970 policy, we conclude that General Tire's February, 1974, Employer's Report could not have served as the notice required by the lay-off coverage provision, *supra.*

Crowe next asks this court to interpret the 1970 policy as requiring only continued payment of premiums to continue coverage of a laid-off employee such as Phillips.

This interpretation would entail regarding as surplusage the phrase requiring written notice to Equitable. This court cannot render such an interpretation. *Oard, supra.*

We conclude that there were no facts which the trial court could have properly considered which constituted the written notice to Equitable plainly required by the lay-off coverage provision of the 1970 policy, *supra.* We therefore find that the trial court erred in entering summary judgment for Crowe.

We need not deal with Equitable's final contention of error. *Bundy v. Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 796.

The trial court's judgment is hereby reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 354 N.E.2d 772.